IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT

2010 OCT -8 AM 8: 55

CLERK _L. Ilbrders_
SO. DIST. OF GA.

ADRIAN BRANHAM,          )
                         )
        Petitioner,      )
                         )
    v.                   )          CV 109-167
                         )          (Formerly CR 107-001)
UNITED STATES OF AMERICA, )
                         )
        Respondent.      )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Adrian Branham, an inmate incarcerated at the United States Penitentiary

in Bruceton, West Virginia, has filed with this Court a motion pursuant to 28 U.S.C. § 2255

to vacate, set aside, or correct his sentence. For the following reasons, the Court **REPORTS**

and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED** without an evidentiary

hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor

of Respondent.

## I. BACKGROUND

On June 8, 2006, a federal grand jury returned an indictment charging Petitioner and

several co-defendants with one count of conspiracy to rob commercial businesses, in

violation of 18 U.S.C. § 1951 ("the Hobbs Act"). United States v. Branham, CR 106-092,

doc. no. 3 (S.D. Ga. June 8, 2006). The indictment also charged Petitioner's co-defendants

with armed bank robbery, in violation of 18 U.S.C. § 2113(a) & (d); brandishing a firearm

during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and possession of

a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Id. However, the Honorable Dudley H. Bowen, Jr., United States District Judge, dismissed the indictment without prejudice as to Petitioner for violation of the Speedy Trial Act. Id., doc. no. 60. On January 9, 2007, Petitioner was re-indicted on the conspiracy charge; Petitioner was also charged, similar to his co-defendants in the first case, with three counts of robbery of commercial businesses, in violation of the Hobbs Act, and three counts of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). United States v. Branham, CR 107-001, doc. no. 1 (S.D. Ga. Jan. 9, 2007) (hereinafter "CR 107-001"). Judge Bowen was originally assigned to the case, and Petitioner was represented by appointed counsel, James Pete Theodocion. CR 107-001, doc. no. 4. Less than two months after the indictment was filed, the case was re-assigned to the Honorable William T. Moore, Jr., United States District Judge, and following a jury trial, Petitioner was convicted on all counts. Id., doc. nos. 12, 39. On September 26, 2007, Judge Moore sentenced Petitioner to a term of 1,644 months of imprisonment, or 137 years.[1] Id., doc. no. 41.

Mr. Theodocion then filed a direct appeal on Petitioner's behalf, asserting the following allegations of error: (1) the trial court erred in dismissing original indictment in CR 106-092 without prejudice, and (2) his re-indictment on additional charges following the

---

[1] In explaining the length of Petitioner's sentence, the Court notes that § 924(c) requires that defendants convicted of more than one violation of this statute receive consecutive sentences of at least 25 years of imprisonment for any "second or subsequent conviction." 18 U.S.C. § 924(c)(1)(C)(i). As Petitioner was convicted on all three firearms charges, the total sentence imposed by Judge Moore reflects that, in addition to the sentences for the Hobbs Act violations, Petitioner received a sentence of 7 years for the first § 924(c) violation and 25 years on each of the subsequent convictions. See id. §§ 924(c)(1)(A)(ii) & 924(c)(1)(C)(i); see also PSI ¶¶ 181, 182, 183.

dismissal of the first indictment constituted prosecutorial vindictiveness. See generally United States v. Branham, 285 F. App'x 642 (11th Cir. 2008) (*per curiam*). However, the Eleventh Circuit rejected Petitioner's arguments and accordingly affirmed his convictions. See id. at 645. Petitioner's *pro se* petition for a writ of certiorari was denied by the United States Supreme Court on January 12, 2009. Branham v. United States, 129 S. Ct. 941 (2009).

Petitioner then timely filed the instant § 2255 motion and supporting memorandum, in which he asserts the following as grounds for relief:

(1)     trial counsel was ineffective for stipulating to the interstate commerce nexus element of the Hobbs Act conspiracies and robberies and abandoning this "true line of defense";

(2)     trial counsel was ineffective for failing to move to dismiss the indictment for (a) Speedy Trial Act violations, (b) prosecutorial vindictiveness, and (c) multiplicity/double jeopardy;

(3)     trial counsel was ineffective for not objecting to the introduction of Rule 404(b) evidence of prior crimes and not requesting a limiting instruction as to this evidence;

(4)     trial counsel was ineffective for not filing a motion to suppress a certain audio recording and not challenging its authenticity at trial;

(5)     trial counsel was ineffective for not objecting to letters admitted at trial that Petitioner contends were inadmissible;

(6)     trial counsel was ineffective for failing to request that Judge Bowen be recused in the first case, CR 106-092;

(7)     trial counsel was ineffective for failing to object to the trial court's allegedly erroneous and incomplete jury instruction on liability for aiding and abetting;

(8)     trial counsel was ineffective for not polling the jurors following the trial;

(9)     trial counsel violated the American Bar Association's Rules of Professional Conduct;

(10)    appellate counsel was ineffective for not communicating with Petitioner while his appeal was pending and not including the issues Petitioner wanted presented in the brief filed with the Eleventh Circuit;

(11)    appellate counsel was ineffective for not filing a response brief and for not petitioning the Eleventh Circuit for a re-hearing *en banc*;

(12)    the indictment was defective for failing to allege the necessary elements of interference and robbery under the Hobbs Act;

(13)    the government committed prosecutorial misconduct by allowing an exculpatory witness to plead the Fifth Amendment;

(14)    the trial court improperly instructed the jury on the elements of conspiracy; and

(15)    his sentence was "draconian."

(See doc. nos. 1, 2.) Respondent asserts that all of Petitioner's claims are either procedurally defaulted or without merit. (See doc. no. 8.) Petitioner then filed a reply brief in which he requests an evidentiary hearing on the claims raised in his § 2255 motion. (See doc. no. 9, pp. 1, 11.) The Court resolves the matter as follows.

## II.  DISCUSSION

### A.    No Need for Evidentiary Hearing

In regard to Petitioner's request for an evidentiary hearing, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court

to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised.

Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are barred from review or otherwise without merit. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing should be denied.

**B.    Procedurally Defaulted Claims**

**1.    Available Claims Must Be Raised on Direct Appeal**

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (*per curiam*) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

A procedural bar or default cannot be overcome unless the § 2255 movant "can demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error." Montano, 398 F.3d at 1280. "In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a

fundamental miscarriage of justice; 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

### 2. Petitioner Failed to Assert Claims 12 through 15 on Direct Appeal

Petitioner asserts in Claims 12 through 15 detailed above that the indictment was defective; the government committed prosecutorial misconduct; the trial court improperly instructed the jury on the elements of conspiracy; and his sentence was "draconian." However, these claims were not raised on direct appeal, and therefore Petitioner cannot now bring these claims in this collateral proceeding. "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal." McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001) (citation omitted). By failing to raise Claims 12 through 15 on direct appeal, Petitioner procedurally defaulted these claims.

The Court is aware that constitutionally ineffective assistance of counsel can constitute cause. Greene v. United States, 880 F.2d 1299, 1305 (11th Cir. 1989) (citing Murray, 477 U.S. at 488). However, Petitioner's claims of ineffective assistance of counsel are not based on his attorney's purported refusal to raise Claims 12 through 15 on appeal. Indeed, while Petitioner has alleged that counsel was ineffective for failing to raise certain issues on appeal (namely, the admissibility of certain trial testimony and the sufficiency of the evidence supporting his conspiracy conviction), none of these issues that Petitioner alleges that he told his attorney to raise are contained in Claims 12 through 15 listed above.

(See doc. no. 2, p. 17.) Accordingly, the Court finds that Petitioner has failed to establish that he can meet the cause and prejudice standard that would excuse his procedural default of Claims 12 through 15, and accordingly, these claims are barred from review in this collateral proceeding.

## C. Ineffective Assistance of Counsel Claims

### 1. Applicable Rules Explained

Turning to Petitioner's claims of ineffective assistance of counsel, the Court begins by noting that it agrees with Respondent that Petitioner appears to be attempting to avoid the procedural default rules explained above by characterizing them in terms of ineffective assistance of counsel. See Lynn, 365 F.3d at 1234 n.17 (citing Massaro v. United States, 530 U.S. 500 (2003)) (explaining that ineffective assistance of counsel claims are generally excepted from the procedural default rules). However, in an abundance of caution, the Court will address these claims on their merits as Petitioner has characterized them.

That said, Petitioner faces another procedural hurdle in this case. Specifically, claims that are raised and rejected on direct appeal are generally precluded from reconsideration in a § 2255 motion. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); Edwards v. United States, 795 F.2d 958, 961 (11th Cir. 1986); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (*per curiam*).

As the Seventh Circuit noted, "[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do

so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004). Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal.[2] Nyhuis, 211 F.3d at 1343. Thus, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

This means that to the extent Petitioner bases his ineffective assistance of counsel claims on arguments the Eleventh Circuit has already determined to be without merit, this Court will not review, revisit, or otherwise disturb those determinations. This collateral proceeding is not a new trial.[3] A jury convicted Petitioner after a full presentation of the evidence. Petitioner then had the opportunity to present his arguments concerning alleged errors in the trial court when he filed his appeal in the Eleventh Circuit Court of Appeals. While this Court recognizes that Petitioner did not present, and indeed was not required to

---

[2] Stated another way, simply putting a new name on an old issue will not suffice.

[3] The Seventh Circuit explained the narrow parameters under which a conviction may be reviewed in collateral proceedings as follows: "28 U.S.C. § 2255 . . . limits relief to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991) (internal quotation marks omitted); see also United States v. Rosch, Nos. 89 CR 592 and 94 C 3663, 1995 WL 680463, at * 5 (N.D. Ill. Nov. 13, 1995) ("[Defendant] argues essentially that the court erroneously relied upon . . . allegedly perjured testimony . . . in determining the restitution award. The Defendant is attempting to relitigate this issue which has already been previously decided. The recreation of the issues explored at the sentencing hearing and [Defendant's] request to reweigh this evidence is inappropriate on a § 2255 motion.").

present, his current ineffective assistance of counsel claims on appeal, to the extent the factual bases underlying his ineffective assistance claims were decided adversely to Petitioner on appeal, they will not be revisited here. With these principles in mind, the Court turns its attention to the standard for establishing ineffective assistance of counsel.

To establish ineffective assistance of counsel, Petitioner must meet a two-part test. First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

As to appellate counsel, the Court's analysis under Strickland is further guided by the principle that appellate counsel is not ineffective when he fails to raise a frivolous argument on appeal. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). Stated another way, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984), *superceded by statute on other grounds as explained in* United States v. Battle, 264 F. Supp. 2d 1088, 1134-35 (N.D. Ga. 2003). Neither does the Sixth Amendment require appellate

advocates to raise every non-frivolous issue. <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991).

In applying the <u>Strickland</u> components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Smith v. Wainwright</u>, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." <u>Id.</u> at 616 (citing <u>Strickland</u>, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion -- though the presumption is not insurmountable -- is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done.

Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Because determining whether Petitioner suffered prejudice hinges upon the validity of the underlying claims, Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) and Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988), the Court will review the merits of the allegations forming the basis of Petitioner's ineffective assistance of counsel claims.

### 2.    Claim 1 - Stipulation to Interstate Commerce Nexus Element

The Court begins with Petitioner's contention that trial counsel was ineffective for stipulating to the interstate commerce nexus element of the conspiracies and bank robberies under the Hobbs Act. According to Petitioner, this was a viable defense that trial counsel should have pursued. In analyzing this claim, the Court begins by noting that under the Hobbs Act,

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). Notably, the Eleventh Circuit has recognized that robbery "is undeniably an economic crime" that has a "clear, direct, and unattenuated" relationship to commerce. United States v. Gray, 260 F.3d 1267, 1274 (11th Cir. 2001); see also United

States v. Spinello, 265 F.3d 150, 156 (3d Cir. 2001) ("[B]ank robbery has an immediate, non-collateral, non-speculative effects on interstate commerce."). To that end, the Eleventh Circuit has further held that the effect on interstate commerce necessary to satisfy the jurisdictional element under the Hobbs Act need only be *de minimis* and may be satisfied by a showing of the potential, rather than the actual, effect on interstate commerce. United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001) (citing United States v. Farrell, 877 F.2d 870, 875 (11th Cir. 1989)).

In Strickland, the Supreme Court observed that strategic choices made after the investigation of plausible options are "virtually unchallengeable," Strickland, 466 U.S. at 690, and the choice of defense strategy amounts to ineffective assistance "only if it is so patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983). Here, Petitioner has not alleged that his attorney did not investigate other plausible lines of defense, only that he elected to pursue a defense strategy other than the one Petitioner wanted. Given the minimal showing that must be made to establish the nexus to interstate commerce under the Hobbs Act, it cannot be said that no competent attorney would have chosen to stipulate to this element and pursue other lines of defense. See United States v. Killian, 639 F.2d 206, 210 (5th Cir. 1981)[4] (counsel not ineffective for failing to present doomed entrapment defense). Accordingly, the Court finds that counsel did not err in stipulating to this jurisdictional element of the Hobbs Act,

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

and as such, Petitioner did not suffer any prejudice as a result. Therefore, this claim fails to provide a basis for relief.

### 3.    Claim 2 - Failure to File Motion to Dismiss Indictment

Petitioner next contends that trial counsel was ineffective for failing to move to dismiss the second indictment for Speedy Trial Act violations, prosecutorial vindictiveness, and multiplicity/double jeopardy. As to Petitioner's Speedy Trial Act argument, pursuant to 18 U.S.C. § 1361, where a defendant pleads not guilty, the trial must commence within seventy (70) days of the filing of the indictment or information, or the date of the arraignment, whichever is later. 18 U.S.C. § 1361(c)(1). The indictment in CR 107-001 was filed on January 9, 2007, and Petitioner was arraigned on January 31, 2007. CR 107-001, doc. nos. 1, 6. Accordingly, the speedy trial clock did not begin to run until January 31st.

Petitioner correctly notes that his trial did not commence until May 7, 2007, more than 70 days after he was arraigned. However, as correctly noted by Respondent, Petitioner has not accounted for the time that is excluded under the Speedy Trial Act. Indeed, under 18 U.S.C. § 3161(h)(1)(D), any time between the filing of a motion and the prompt disposition of the motion is excluded from the 70-day period. A review of the docket reveals that after Petitioner was arraigned, fourteen days elapsed until the government filed a motion to amend the indictment on February 14, 2007, and the speedy trial clock was tolled until March 15, 2007, when the motion was granted. CR 107-001, doc. nos. 10, 13. Another thirty-nine days elapsed before Petitioner filed an *ex parte* motion for writ of habeas corpus ad testificandum on April 23, 2007, and the speedy trial clock was again tolled until that

motion was granted on April 25, 2007. Id., doc. nos. 15, 16. Five more days elapsed before the government filed a motion in limine on April 30, 2007, which remained pending when Petitioner filed his own motion in limine on May 4, 2007; accordingly, the speedy trial clock was again tolled until the motions were decided on May 7, 2007, the morning of trial. Id., doc. nos. 24, 26. In sum, 58 "countable days" elapsed from the time of Petitioner's arraignment to his trial, well within the 70-day time period prescribed by the Speedy Trial Act. Therefore, it cannot be said that counsel erred in failing to move to dismiss the indictment on speedy trial grounds or that Petitioner was prejudiced as a result.

To the extent Petitioner argues that counsel should have moved to dismiss the indictment on the grounds of prosecutorial vindictiveness, this argument fails as well. Petitioner's claim is based on the fact that after the first indictment was dismissed for speedy trial violations, he was re-indicted on additional charges. Notably, Petitioner raised this argument on direct appeal, and although the Eleventh Circuit determined that the issue had been waived because it was not raised before trial, it nonetheless went on to briefly consider the issue, stating as follows: "[T]he law is not clear that a presumption of vindictiveness would arise in a context like the instant one, where the defendant is re-indicted on heightened charges following the exercise of a right prior to trial. . . . We would not, therefore, find this to be a case of plain error." Branham, 285 F. App'x at 644 n.1 (quoting United States v. Barner, 441 F.3d 1310, 1316 (11th Cir. 2006)).

Thus, the Eleventh Circuit has already decided that the government's decision to include additional charges in the new indictment, which were similar to the ones brought against Petitioner's co-defendants in the first indictment in CR 106-092, did not necessarily

14

amount to prosecutorial vindictiveness. While Petitioner may disagree with the Eleventh Circuit's rejection of this argument, it is not for this Court to disturb the findings of the appellate court. As the Eleventh Circuit has already rejected Petitioner's prosecutorial vindictiveness claim, and Petitioner has simply attempted to re-characterize this argument in terms of ineffective assistance of counsel, the Court will not consider it further, and this claim provides no basis for relief.

Finally, Petitioner contends that counsel should have moved to dismiss the indictment because it was multiplicitous and violated the Double Jeopardy Clause, pointing out that the facts necessary to prove the conspiracy, other Hobbs Act charges, and the firearms charges all arose out of the same set of events. (Doc. no. 2, p. 9.) However, as correctly noted by Respondent and as explained below, Petitioner misapprehends the nature of his double jeopardy and multiplicity challenges by confusing the elements of the offenses with the evidentiary proof of those offenses. (Doc. no. 8, p. 9.)

In considering this argument, the Court begins by noting that the Fifth Amendment's Double Jeopardy Clause generally prohibits multiple punishments for the same offense. United States v. Bobb, 577 F.3d 1366, 1371 (11th Cir. 2009). Furthermore, "[a]n indictment is [impermissibly] multiplicitous if it charges a single offense in more than one count." United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995). "In order to avoid multiplicity, only one fact or element need be different between each charge." United States v. Costa, 947 F.2d 919, 926 (11th Cir. 1991) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)). Under Blockburger, the test to be applied to determine whether two statutory provisions prohibiting the same conduct violate the Double Jeopardy Clause, or whether each

count of the indictment may result in a conviction for the same offense, is "whether each provision [or count] requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. As alluded to above, under this test, the focus is on the proof necessary to establish the statutory elements of the offense, not the actual evidence presented at trial. Illinois v. Vitale, 447 U.S. 410, 416 (1980).

That said, the Eleventh Circuit has recognized that the commission of a substantive offense and a conspiracy to commit that offense are separate and distinct offenses. United States v. Gornto, 792 F.2d 1028, 1035 (11th Cir. 1986), *overruled on other grounds by* Dowling v. United States, 493 U.S. 342, 348-49 (1990). Thus, the conspiracy charge in this case is distinct from the substantive robbery and firearms offenses. The Court also notes that in a similar case from the Fifth Circuit, the defendant argued that his prosecution for both violations of the Hobbs Act and § 924(c) was multiplicitous and violated double jeopardy. United States v. Martinez, 28 F.3d 444, 446 (5th Cir. 1994). The Fifth Circuit rejected that argument, holding that "both statutory comparison and statutory construction make abundantly clear that concurrent prosecutions for sections 1951 and 924(c)(1) violations do not violate double jeopardy protection." Id.; accord United States v. Reddick, 231 F. App'x 903, 919 (11th Cir. 2007) (*per curiam*) (holding that it is permissible to sentence a defendant for armed robbery under 18 U.S.C. § 2113(a) & (d), as well as a Hobbs Act violation under § 1951(a) because each requires proof of an element that the other does not). Accordingly, the Court finds that the indictment, which charged Petitioner with conspiracy, robberies under the Hobbs Act, and § 924(c) firearms violations, was not multiplicitous and did not violate the Double Jeopardy Clause. Thus, it cannot be said that counsel erred in not moving

16

to dismiss the indictment on such grounds, or that Petitioner suffered any prejudice as a result.

In sum, Petitioner's argument that counsel was ineffective for failing to challenge the indictment for violations of the Speedy Trial Act, prosecutorial vindictiveness, and multiplicity/double jeopardy is without merit and fails to provide a basis for relief.

### 4. Claim 3 - Rule 404(b) Evidence and Limiting Instruction

The Court next turns to Plaintiff's claim that counsel was ineffective for failing to object to the admission of evidence regarding Petitioner's other crimes under Fed. R. Evid. 404(b) and for not requesting that a limiting instruction regarding this evidence be given to the jury. Fed. R. Evid. 404(b) prohibits the introduction of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." However, Rule 404(b) goes on to state that such evidence may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Furthermore, Rule 609 allows for the admission of evidence regarding prior convictions of a defendant for the purpose of impeachment if the probative value of the evidence outweighs its prejudicial effect to the defendant. Fed. R. Evid. 609(a)(1).

A review of the record reveals that the government's theory was that Petitioner had planned and orchestrated the robberies so that he could post bond and be released from jail on other charges. CR 107-001, doc. no. 46, p. 430 (hereinafter "Trial Tr."). Furthermore, during the government's cross-examination, Petitioner denied orchestrating the series of bank

robberies, even though several witnesses testified during the government's case-in-chief that Petitioner did orchestrate the robberies while incarcerated. Trial Tr., pp. 428-29. Thus, it appears that Petitioner was asked about his current charges and past convictions in order to establish a framework for the conspiracy and his motives for soliciting the robberies (which is admissible under Rule 404(b)), as well as to impeach Petitioner's prior testimony under Rule 609. Accordingly, the Court finds that counsel did not err in failing to object to the admission of such evidence.

The Court also notes that a review of the trial transcript reveals that counsel in fact filed a motion alerting Judge Moore to the possibility that Rule 404(b) evidence would be introduced and requested a limiting instruction, which Judge Moore gave when he charged the jury. See CR 107-001, doc. no. 26; Trial Tr., pp. 12-13, 467-68. As counsel did file a motion on this issue and requested a limiting instruction that was given by Judge Moore, it cannot be said that counsel erred in this respect either, or that any prejudice inured to Petitioner as a result. Accordingly, this claim also fails to provide a basis for relief.

### 5.    Claim 4 - Motion to Suppress and Authenticity of Audio Recording

Petitioner next claims that counsel should have filed a motion to suppress a "phone disk," which the Court construes as Petitioner's reference to an audio recording introduced at trial that contained recordings of numerous telephone calls between Petitioner and his co-defendants, in which they discussed their plans for robbing the bank and how to dispose of

the proceeds.[5] Trial Tr., pp. 26-28. While Petitioner does not state why the audio recording should have been suppressed prior to trial, he does take issue with the authenticity of the recording and contends that counsel should have objected at trial as to the stipulations on the admission of the recording.

As to the authenticity argument, Petitioner takes issue with the fact that the government introduced no phone records showing the dates and times the recordings were made and that the detective who authenticated the recording did not make the recording. As Respondent correctly notes, it is not necessary for the witness offering a record or recording to be the person who made it. See United States v. Jones, 554 F.2d 251, 252 (5th Cir. 1977) (per curiam). Furthermore, "[a] speaker's voice may be identified . . . 'based on hearing the voice at any time under circumstances connecting it with the alleged speaker.'" United States v. Gonzalez-Perez, 283 F. App'x 716, 723-24 (11th Cir. 2006) (per curiam) (quoting Fed. R. Evid. 901(b)(5)). In addition, the Eleventh Circuit has recognized that the voice of a speaker on a recording may also be identified via "self-identification of each [speaker] on at least one occasion during the intercepted . . . conversations . . . ." United States v. Green, 40 F.3d 1167, 1173 (11th Cir. 1994). Also of note, any defects in authenticity or identification of the speakers do not provide a basis for suppression, but rather go to the weight of the evidence. See United States v. Albert, 595 F.2d 283, 290 (5th Cir. 1979).

---

[5]Although the contents of the audio recording are not apparent from the trial transcript, Respondent has described their contents as set forth above in its response to Petitioner's § 2255 motion. (See doc. no. 8, p. 15.) Notably, Petitioner has not objected to Respondent's characterization of the contents of the audio recording in his reply brief. (See doc. no. 9.)

At trial, Sergeant Scott McDonald with the Richland County Sheriff's Office in Columbia, South Carolina, testified that following one of the bank robberies at issue, Petitioner was brought to the Richland County Jail on April 12, 2006, for a bond hearing and remained there through at least May 1, 2006. Trial Tr., pp. 32, 37-38. Sergeant McDonald also testified that the Jail automatically records phone calls made by inmates, which are paid for through an account set up in the inmate's name, and Sergeant McDonald had several phone calls made by Petitioner during the time he was at the jail burned onto a compact disc. Id. at 25-28. As noted above, during these conversations Petitioner and his co-defendants discussed their plans for the bank robberies and how to dispose of the proceeds. Notably, Sergeant McDonald testified that Petitioner identified himself as the caller in every single conversation and that he was able to identify the voices of the other speakers because he had spoken with each one of them. Id. at 31-32.

As noted above, voices on a recording may be identified through self-identification of the speaker or if the witness has heard the speaker's voice at any time. Gonzalez-Perez, 283 F. App'x at 723-24; Green, 40 F.3d at 1173. Furthermore, Sergeant McDonald's testimony establishes that the recordings were made at the time that Petitioner was incarcerated at the Richland County Jail, and the phone calls recorded were set up through Petitioner's account. Finally, to the extent Petitioner argues that counsel should have moved to suppress this recording because of issues with its authenticity, as noted above, any such issues go to the weight of the evidence, not its admissibility. Albert, 595 F.2d at 290. Accordingly, this claim of ineffective assistance of counsel is also without merit and fails to provide a basis for relief.

### 6.   Claim 5 - Allegedly Inadmissible Letters

The Court next turns to Petitioner's contention that counsel should have objected to the admission of certain letters at trial that Petitioner had written to his mother and co-defendants, in which Petitioner made incriminating admissions.  Trial Tr., pp. 449-56.  Notably, while Petitioner now contends that some of the letters were not authenticated, Petitioner himself authenticated the letters during his testimony at trial.  Id. at 449-50.

To the extent Petitioner contends that the letters should not have been admitted because they were written after the conspiracy ended, when Petitioner and his co-defendants, were in jail, this argument also fails.  To begin, Petitioner has offered nothing to prove that his other co-defendants were in jail at the time the letters were written.  Furthermore, although Petitioner correctly points out that statements of one conspirator are not admissible against another conspirator after the conspiracy has ended, see United States v. Meachum, 626 F.2d 503, 511 n.8 (5th Cir. 1980), Petitioner's argument ignores the fact that his own statements, not the statements of a co-conspirator, were admitted against him via the letters.  Thus, the rule Petitioner cites is inapplicable to this case.  As Petitioner authenticated the letters at trial and his own statements were properly admitted against him, it cannot be said that counsel erred in failing to object to the admission of these letters or that Petitioner suffered any prejudice as a result.  Accordingly, this claim is also without merit and fails to provide a basis for relief.

## 7.    Claim 6 - Recusal of Judge Bowen

Petitioner also claims that counsel was ineffective for failing to move to have Judge Bowen recused during his first case, CR 106-092. According to Petitioner, Judge Bowen was due to be recused because he is a member of the CSRA Credit Union, which was one of the institutions that the government had alleged was robbed during the course of the conspiracy. (Doc. no. 2, p. 13.) It appears that Petitioner believes that had Judge Bowen been recused in CR 106-092, a different judge would have dismissed the indictment with prejudice, and no second indictment would have been issued, which ultimately resulted in his current incarceration.

Notably, as discussed above, on appeal, Petitioner challenged the trial court's dismissal of the indictment without prejudice. After setting forth the applicable law,[6] the Eleventh Circuit rejected Petitioner's argument, finding as follows:

> The delay at issue here was only four days. Importantly, there is no indication in the record that the delay was the result of any intentional delay by the government; instead it was the result of scheduling difficulties in the district court due to the judge's illness. Because the bank robbery offenses were serious in nature, and the Speedy Trial Act violation that resulted in dismissal of the original indictment was not due to a severe delay, nor an

---

[6]In determining whether to dismiss and indictment with or without prejudice for violation of the Speedy Trial Act, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162. Notably, "[w]here the crime charged is serious, the court should dismiss [with prejudice] only for a correspondingly severe delay." United States v. Russo, 741 F.2d 1264, 1267 (11th Cir. 1984). Furthermore, dismissal without prejudice is appropriate when the delay is attributable to "negligence and oversight," rather than "intentional delay." United States v. Miranda, 835 F.2d 830, 834-35 (11th Cir. 1988).

> intentional act by the government, we hold that the district court did not err
> by dismissing the original indictment without prejudice.

Branham, 285 F. App'x at 644. As the Eleventh Circuit has held that there was no error in

Judge Bowen's decision to dismiss the original indictment without prejudice, it cannot be said

that, assuming *arguendo* that counsel should have moved for Judge Bowen's recusal in CR

106-092, another judge would have dismissed the indictment with prejudice or that any

prejudice inured to Petitioner as a result of counsel's alleged error. Accordingly, this claim

of ineffective assistance of counsel also fails to provide a basis for relief.

## 8. Claim 7 - Jury Instruction on Liability for Aiding and Abetting

Petitioner further asserts that counsel was ineffective for failing to object to the trial

court's allegedly erroneous jury instruction on liability for aiding and abetting, specifically

arguing that the instruction did not contain the requisite intent element. (Doc. no. 2, p. 11.)

A party to a conspiracy may be held vicariously liable for the substantive offenses committed

by a co-conspirator during the course of and in furtherance of the conspiracy, even if the party

did not participate in the offense. Pinkerton v. United States, 328 U.S. 640, 646-48 (1946);

United States v. Hansen, 262 F.3d 1217, 1246 (11th Cir. 2001). Pinkerton liability arises not

only where the substantive crimes were the objects of the conspiracy (here, the bank

robberies) but also where the substantive crimes facilitated the accomplishment of the goal

of the conspiracy (here, the possession of firearms). United States v. Mothersill, 87 F.3d

1214, 1218 (11th Cir. 1996); United States v. Alvarez, 755 F.2d 830, 850 n.24 (11th Cir.

1985).

Notably, a defendant who associates himself with a criminal venture and participates in it as something he wishes to happen is liable as a principal, Hansen, 262 F.3d at 1236, and the fact that an individual was not present at the scene of the crimes does not relieve him of criminal liability for the substantive offenses as an aider and/or abetter. United States v. Perez, 922 F.2d 782, 785 (11th Cir. 1991) (defendant charged with possessing cocaine liable as aider and abetter even though he did not actually possess the cocaine where prior to the subject transaction, the defendant performed counter-surveillance); United States v. Broadwell, 870 F.2d 594, 608 (11th Cir. 1989) (defendant charged with kidnapping under 18 U.S.C. § 1952(a)(3) could be held liable as aider and abetter even though he was not present when the victim was transported across state lines where the evidence showed that defendant took "affirmative actions" to make the kidnapping succeed). Indeed, the purpose of the aiding and abetting statute (18 U.S.C. § 2) is to permit a person acting "behind the scenes" to be convicted for the substantive offenses as the principal, even if he did not physically commit the crime himself. United States v. Walser, 3 F.3d 380, 388 (11th Cir. 1993); United States v. Sellers, 871 F.2d 1019, 1022 (11th Cir. 1989). Thus, a defendant may be indicted on the commission of a substantive offense (here, the bank robberies and possession of firearms) and convicted upon evidence demonstrating involvement as an aider or abetter only. Walser, 3 F.3d at 388 (citation omitted).

A review of the trial transcript reveals that the evidence was sufficient to warrant an instruction on aiding and abetting liability with respect to the substantive robbery and firearms offenses with which Petitioner was charged, and the jury was properly instructed on this issue. Indeed, after setting forth the offenses with which Petitioner was charged,

Judge Moore explicitly instructed the jury as follows:

> As to all of these counts, you will note that the defendant is not charged with personally participating in the commission of the substantive offenses. This is because a conspirator may be held responsible under the law for a substantive offense in which he or she had no direct or personal participation if such offense was committed by other members of the conspiracy during the course of such conspiracy and in furtherance of its objects.
>
> . . . .
>
> [W]ith regard to Counts 2 through 7 of the indictment, if you have first found the defendant guilty of the conspiracy offense as charged in Count 1, you may also find the defendant guilty of any of the offenses charged in Counts 2 through 7, even though the defendant did not personally participate in such offense, if you find, beyond a reasonable doubt:
>
> First:    that the offense charged in such count was committed by a conspirator during the existence of the conspiracy and in furtherance of its objects;
>
> Second:    that the defendant under consideration was a knowing and willful member of the conspiracy at the time of the commission of such offense; and
>
> Third:    that the commission of such offense by a conspirator was a reasonably foreseeable consequence of the conspiracy.
>
> The guilt of a defendant in a criminal case may be proved without evidence that the defendant personally did every act involved in the commission of the crime charged. The law recognizes that ordinarily anything a person can do for one's self may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort.
>
> So if the acts or conduct of an agent, employee, or other associate of the defendant are willfully directed or authorized by the defendant, or if the defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds the defendant responsible for the conduct of that other person just as though the defendant

had personally engaged in such conduct. However, before any defendant can be held criminally responsible for the conduct of others, it is necessary that the defendant willfully associated in some way with the crime, and willfully participated in it. Mere presence at the scene of the crime and even knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.

Trial Tr., pp. 470-71, 474-76.

As the trial court properly instructed the jury on aiding and abetting liability, it cannot be said that counsel erred in failing to object to the instructions given or that Petitioner was prejudiced as a result. Accordingly, this claim is without merit and fails to provide a basis for relief.

### 9. Claim 8 - Polling the Jurors

Petitioner also claims that counsel was ineffective for failing to "poll" the jurors after the conclusion of the trial.[7] (Doc. no. 2, p. 16). According to Petitioner, this was error because the trial court not only failed to "determine the extent of [the jury's] numerical division," thereby somehow making the charges "inherently coercive," but also because, according to Petitioner, the jury's questions to Judge Moore during deliberations demonstrate that the members of the jury were confused about one of the jury charges. (Id.) However,

---

[7]As Petitioner was convicted in the Southern District of Georgia, his reliance on a local rule from the Southern District of Florida to support his argument (doc. no. 2, p. 16) is inapposite.

as the government explains (doc. no. 8, p. 2), both Fed. R. Evid. 606(b)[8] and Loc. R. 83.8[9]

prevent just such "fishing expeditions in search of information with which to impeach jury

verdicts." United States v. Venske, 296 F.3d 1284, 1291 (11th Cir. 2002) (citing United

States v. Davila, 704 F.2d 749, 754 (5th Cir. 1983)); see also Tanner v. United States, 483

U.S. 107, 121 (1987) ("Federal Rule of Evidence 606(b) is grounded in the common-law rule

against admission of jury testimony to impeach a verdict and the exception for juror

testimony relating to extraneous influences."). Here, Petitioner offers nothing to substantiate

any claim for a need to inquire into the validity of the guilty verdict in his case.

To the extent Petitioner contends that counsel should have sought approval from

Judge Moore to speak with jurors (or as Petitioner terms it, "poll" the jurors) based on the

jury's confusion over one of the jury charges, this argument fails. Indeed, a review of the

trial transcript reveals that the jury did not express any confusion about the charges they were

given. Rather, all the questions sent to Judge Moore by the jury requested audio recordings

---

[8]In pertinent part, Fed. R. Evid. 606(b) provides:

>   **Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether the extraneous prejudicial was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.

[9]Loc. R. 83.8 provides, in part: "No party, attorney, or other person shall, without Court approval, make or attempt any communication relating to any feature of the trial of any case with any regular or alternate juror who has served in such case. . . ."

introduced at trial, as well as the accompanying transcripts. Trial Tr., pp. 480-84. Notably, Petitioner has cited no other reason why counsel should have requested permission to "poll" the jurors. Accordingly, Petitioner cannot show that counsel erred by failing to request permission to "poll" the jurors, or that he suffered any prejudice as a result. Therefore, this claim is without merit and provides no basis for relief.[10]

### 10. Claim 9 - Violation of ABA Rules of Professional Conduct

Petitioner also contends in his memorandum in support of his § 2255 motion that counsel was ineffective because he violated the ABA Rules of Professional Conduct, in particular Rule 1.1, which provides that a lawyer shall provide competent representation to his or her client, and Rule 8.4, which notes various types of prohibited conduct for an attorney. (Doc. no. 2, pp. 7, 8.) To begin, Petitioner has made no showing, besides his conclusory allegations, that any ABA Rules of Professional Conduct were violated. Even if Petitioner had done so, however, in <u>Strickland</u>, the Supreme Court recognized that while the ABA standards and other model rules reflect the "prevailing norms of practice," such rules are "*only guides*" as to what may be considered reasonable representation by an attorney. <u>Strickland</u>, 466 U.S. at 688 (emphasis added). Indeed,

---

[10]To the extent Petitioner claims that the trial court erred in failing to poll the jurors as to their numerical division after their verdict (<u>see</u> doc. no. 2, p. 16), this argument was not raised on direct appeal, and for the reasons stated in Part II.B, *supra,* this argument is procedurally defaulted and barred from review in this collateral proceeding. In any event, a suggestion of numerical division makes little sense in light of the fact that the jury was charged to reach a unanimous verdict. Trial Tr., p. 477. The signed jury verdict is in the record (CR 107-001, doc. no. 39), and Petitioner has presented nothing to support his apparent suggestion that the verdict was not unanimous.

No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions . . . . Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause.

Id. at 688-89 (internal citation omitted). As the Supreme Court has rejected Petitioner's argument that violation of the ABA Rules of Professional Conduct necessarily constitute ineffective assistance of counsel, this claim also fails to provide a basis for relief.

### 11. Claim 10 - Communication with Petitioner and Issues Raised on Appeal

Petitioner also contends that counsel was ineffective for failing to raise allegedly meritorious claims of error with the Eleventh Circuit. Specifically, Petitioner contends that counsel should have challenged certain testimony from a government witness, as well as the sufficiency of the evidence supporting Petitioner's conspiracy conviction. (Doc. no. 2, p. 17.)

In analyzing these assertions, the Court emphasizes that appellate counsel is not ineffective for failing to raise frivolous arguments on appeal, Winfield, 960 F.2d at 974, or claims "reasonably considered to be without merit." Alvord, 725 F.2d at 1291. As to the testimony Petitioner alleges should have been challenged on appeal, Petitioner cites to testimony by his sister, Teala Branham, during which she testified that her former boyfriend, David Jackson, had told her that Petitioner instructed him (the former boyfriend) to steal bulletproof vests from Fort Gordon so that Petitioner could recruit an army to rob banks.

Trial Tr., pp. 338-39. Notably, Teala Branham and David Jackson were identified by their initials as un-indicted co-conspirators of Petitioner in the conspiracy count charged in the indictment.[11] CR 107-001, doc. nos. 1, 14. According to Petitioner, this testimony by his sister concerning obtaining vests from Fort Gordon was inadmissible hearsay.

"Hearsay is inadmissible unless it meets one of the exceptions to the hearsay rule. See Fed. R. Evid. 802. Under Rule 801(d)(2)(E), statements made by a co-conspirator in furtherance of a conspiracy are not hearsay. Fed. R. Evid. 801(d)(2)(E)." United States v. Flores, 572 F.3d 1254, 1264 (11th Cir. 2009) (*per curiam*). "[I]n order to introduce statements of the co-conspirator under Fed. R. Evid. 801(d)(2)(E), the government must prove by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy." United States v. Underwood, 446 F.3d 1340, 1345-46 (11th Cir. 2006). Here, as the government correctly points out, Petitioner is complaining about testimony by one conspirator relating to a conversation between conspirators regarding [Petitioner's] instructions to obtain equipment for bank robberies which were the object of the conspiracy. (Doc. no. 8, p. 16.) Such testimony falls squarely within the purview of Fed. R. Evid. 801(d)(2)(E). Petitioner has not argued, let alone established, that the government failed to satisfy the criteria for

---

[11] Count One of the indictment charged that Petitioner conspired "with co-conspirators Isaac Doby, Demetrius Freeman, Vincent Savageau, and unindicted co-conspirators J.W., T.B., D.C., and D.J., and others, known and unknown," to rob commercial businesses. CR 107-001, doc. nos. 1, 14.

admission of such co-conspirator statements; there was no error in failing to challenge the testimony.

Moreover, even if the Court were to assume for the sake of argument that the contested testimony was inadmissible hearsay, this fact alone would not have required reversal of Petitioner's conviction on appeal. For as the Eleventh Circuit has explained:

> To require a new trial. . . [a] significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the . . . statement had a substantial impact upon the verdict of the jury. [E]videntiary and other nonconstitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted.

United States v. Arbolaez, 450 F.3d 1283, 1290 (11th Cir. 2006) (*per curiam*) (internal citations omitted). Here, a review of the evidence at trial reveals that there was more than sufficient evidence for the jury to find Petitioner guilty of conspiracy, thereby refuting any contention that the disputed testimony had a substantial impact on the verdict or that there were grounds for counsel to challenge the sufficiency of the evidence supporting Petitioner's conspiracy conviction. Indeed, several of Petitioner's co-conspirators and/or co-defendants from the original prosecution testified about Petitioner's plans to rob several banks and how he had orchestrated those robberies while he was incarcerated so that he could post bond and get out of jail. See Trial Tr., pp. 73-86, 91-97, 118-19, 186-88, 191-204, 211-16, 270-74, 309-11, 326-27, 331-36; see also PSI ¶¶ 5-9.

In sum, Petitioner's argument about the admission of co-conspirator statements is without merit, and the record reflects that there was an abundance of evidence presented at

trial to support the conspiracy conviction. Thus, it cannot be said that counsel erred in failing to raise these issues of admission of statements of a co-conspirator and sufficiency of the evidence on appeal or that Petitioner was prejudiced as a result. Accordingly, Petitioner is not entitled to relief on this claim.

### 12. Claim 11 - "Response" Brief and Petition for Re-Hearing *En Banc*

Finally, the Court addresses Petitioner's argument that counsel was ineffective for failing to file a reply brief (or what Petitioner terms a "response" brief) on appeal and failing to petition the Eleventh Circuit for a re-hearing *en banc*. In addressing this issue, the Court notes that a party who has filed an appeal with the Eleventh Circuit must first seek permission of the appellate court to file a reply brief, and such briefs may not contain issues not previously raised in the initial brief. See United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004). Thus, to the extent Petitioner contends that counsel should have filed a reply brief (or sought permission to do so) to raise issues that had not been raised in the initial brief, this argument fails. As to Petitioner's argument that counsel should have petitioned for a re-hearing *en banc*, the Federal Rules of Appellate Procedure and the Eleventh Circuit Rules provide that such a petition may only be filed if the original decision conflicts with a decision of the United States Supreme Court or the decisions of all other appellate courts that have addressed the issue. Fed. R. App. P. 35(b); 11th Cir. R. 35-5. Nowhere in his § 2255 motion or supporting memorandum has Petitioner alleged that the Eleventh Circuit's ruling was contrary to a decision of the Supreme Court or the decisions of other appellate courts. Accordingly, it cannot be said that counsel erred in failing to file

a reply brief or petition for a re-hearing *en banc*, or that Petitioner suffered any prejudice as a result. Accordingly, this claim is also without merit and fails to provide a basis for relief.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent. Furthermore, should the district court adopt this Court's recommendation, Petitioner would be required to obtain a certificate of appealability ("COA") before appealing the denial of his motion to vacate. A COA should only be granted if the prisoner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the analysis above, and in consideration of the standards enunciated in <u>Slack v. McDaniel</u>, 529 U.S. 473, 482-84 (2000), the Court can discern no COA-worthy issues at this stage of the litigation and therefore **REPORTS** and **RECOMMENDS** that if the § 2255 motion is denied, no COA should issue. Moreover, because there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Accordingly, *in forma pauperis* status on appeal should also be **DENIED**. <u>See</u> 28 U.S.C. § 1915(a)(3).

SO REPORTED and RECOMMENDED this 8th day of October, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE